UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| KEVIN JULIAN, individually and on behalf of all others similarly situated,<br><br>      Plaintiff,<br><br> v.<br><br>ONLY WHAT YOU NEED, INC.,<br><br>      Defendant. | Civil Action No.:<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

  Plaintiff Kevin Julian ("Plaintiff") brings this action on behalf of himself and all others similarly situated against Defendant Only What You Need, Inc. ("Defendant" or "OWYN"), for manufacturing, marketing and distributing plant-based protein products that contain dangerous levels of per- and polyfluoroalkyl substances ("PFAS"), also known as "forever chemicals." Plaintiff makes the following allegations pursuant to the investigation of his counsel and based upon information and belief, except as to the allegations specifically pertaining to himself, which are based on personal knowledge.

## COMMON FACTUAL ALLEGATIONS

  1. OWYN is a supplement company that sells protein shakes and powders (the "Products"). Its labels tell consumers that the Products contain "Only What You Need" and "Nothing You Don't" because "What's inside matters."



2. But, unfortunately for consumers, OWYN's Products contain something that humans should never ingest: dangerously high levels of PFAS chemicals.

3. Specifically, laboratory testing has revealed that the following OWYN protein powders tested positive for PFAS chemicals:

| Product Name | PFAS Detected | ng/g |
|---|---|---|
| OWYN 20g Plant Based Protein Chocolate | PFOA | 0.291 |
| OWYN 100% Plant Protein Powder Smooth Vanilla | PFOA | 0.159 |
| OWYN 20g Plant Based Protein Cookies & Creamless Plant Based Protein Shake | PFOA | 0.368 |
| OWYN Only What You Need 20g Plant Based Protein Dark Chocolate | PFOA | 0.225 |

4. Laboratory testing has likewise revealed that the following OWYN protein shakes tested positive for PFAS chemicals:

| Product Name | PFAS Detected | ng/L |
|---|---|---|
| OWYN Only What You Need Meal Replacement Shake 100% Plant-Based Chocolate (330 ML) | PFPeA | 210 |
| | PFOA | 8.796 |

| Product | Substance | Value |
|---|---|---|
| OWYN Only What You Need Non-Dairy Protein Shake 20g Protein Cookies & Creamless (355mL) | PFHxA | 3.2 |
| | PFOA | 8.797 |
| | PFOS | 5.411 |
| OWYN Only What You Need Non-Dairy Protein Shake Cookies & Creamless (355mL) | PFOA | 3.204 |
| OWYN Only What You Need Non-Dairy Protein Shake Cold Brew Coffee (355 ML) | PFHxA | 4.361 |
| | PFOA | 3.325 |
| | PFOS | 12.761 |
| OWYN Only What You Need Non-Dairy Protein Shake Cold Brew Coffee (355 ML) | PFOA | 9.008 |
| OWYN Only What You Need Plant-Based Drink Dark Chocolate (355mL) | PFOA | 30.005 |
| | PFBS | 3.438 |
| OWYN Only What You Need Non-Dairy Protein Shake Dark Chocolate (355 ML) | PFOA | 10.412 |
| OWYN Only What You Need 100% Plant Powered Pro Elite Chocolate (355 ML) | PFHxA | 3.271 |
| | PFOA | 12.6 |
| OWYN Only What You Need 100% Plant Powered Pro Elite No Nut Butter Cup (355 ML) | PFOA | 13.438 |
| | 6:2 FTS | 29.333 |
| OWYN Only What You Need 100% Plant Powered Pro Elite Vanilla (355 ML) | PFOA | 14.529 |
| OWYN Only What You Need Non-Dairy Protein Shake Smooth Vanilla (355mL) | PFOA | 13.645 |
| OWYN Only What You Need Non-Dairy Protein Shake Smooth Vanilla (355mL) | PFOA | 5.052 |
| OWYN Only What You Need Meal Replacement Shake 100% Plant-Based Vanilla (330 ML) | PFOA | 11.878 |
| OWYN Only What You Need Non-Dairy Protein Shake Sea Salted Caramel Clean & Delicious 100% Plant-Based (330 ML) | PFOA | 6.722 |
| OWYN Only What You Need Non-Dairy Protein Shake Strawberry Banana Clean & Delicious 100% Plant-Based (330 ML) | PFOA | 6.276 |
| OWYN Only What You Need Non-Dairy Coffee Shake Double Shot 20G Protein Mocha Latte (355mL) | PFHpA | 3.47 |
| | PFOA | 15.279 |
| OWYN Only What You Need Non-Dairy Coffee Shake Double Shot 20G Protein Caramel Macchiato (355mL) | PFOA | 9.774 |

| | | |
|---|---|---|
| OWYN Only What You Need Non-Dairy Coffee Shake Double Shot 20G Protein Vanilla Latte (355mL) | PFOA | 15.126 |
| OWYN Only What You Need Non-Dairy Protein Shake 20g Protein Pumpkin Spice (330mL) | PFOA | 10.483 |

5.      These PFAS chemicals are all dangerous to human health if ingested, even at very low levels.

6.      PFAS are a family of more than 4,000 highly fluorinated aliphatic compounds manufactured by humans.

7.      PFAS are known as "forever chemicals" due to their extended half-life and extreme persistence and bioaccumulation in human bodies.

8.      PFAS have been shown to have a number of toxicological effects in laboratory studies and have been associated with thyroid disorders, immunotoxic effects, and various cancers in epidemiology studies.  The CDC has outlined a host of health effects associated with PFAS exposure, including cancer, liver damage, decreased fertility, and increased risk of asthma and thyroid disease.

9.      On October 18, 2021, underscoring the gravity of the PFAS threat, the Biden Administration announced accelerated efforts to protect Americans from PFAS, nothing that they "can cause severe health problems and persist in the environment once released, posing a serious threat across rural, suburban, and urban areas."

10.     The specific PFAS found in OWYN's Products are of particular concern.

11.     Perfluorooctanoic acid ("PFOA"), one of the most extensively produced PFAS, is used to make carpets, clothing, fabrics for furniture, paper packaging for food and other materials (e.g., cookware) that are resistant to water, grease or stains.  They are also used for firefighting at airfields and in a number of industrial processes.  The half-life of PFOA is

estimated to be 3.5 years in humans, while its half-life in soil may reach up to 1,000 years.  The American Cancer Society has warned that studies in lab animals have found exposure to PFOA increases the risk of certain tumors of the liver, testicles, mammary glands (breasts), and pancreas.  The presence of PFOA in the Products is entirely avoidable.  Ingesting any amount of PFOA is unsafe for humans.

12. Perfluorohexanoic Acid ("PFPeA") is a breakdown product of stain- and grease-proof coatings on food packaging, couches, and carpets.  With a similar structure to PFOA, PFPeA is known to cause cancer, disrupt hormones, and harm the immune system, liver function and fetal growth and development.

13. Perfluorohexanoic acid (PFHxA) is a breakdown product of stain- and grease-proof coatings on food packaging, couches, and carpets.   With a similar structure to PFOA, it is a known cause of hepatic, developmental, hematopoietic, and endocrine effects.

14. Perfluorooctane sulfonic acid ("PFOS") has been used in stain-resistant fabrics, fire-fighting foams, food packaging, and as a surfactant in industrial processes.  PFOS in a person's body is associated elevated cholesterol, changes to liver function, cproduchanges in thyroid hormone levels, and reduced immune response.

15. Perfluorobutane sulfonic acid ("PFBS"), considered a replacement chemical for PFOS, is known to have health effects on the thyroid, reproductive organs and tissues, developing fetus, and kidney.

16. 6:2 Fluorotelomer Sulfonate ("6:2 FTS") is known to cause kidney and liver damage.

17. In light of the harm caused by PFAS, consumers have grown increasingly aware of and concerned about PFAS in their bodies, the environment, and the products they use.  In a

survey of more than 1,000 consumers, nearly all participants (98%) indicated they were interested in knowing about the presence of harmful chemicals in everyday products.

18. No reasonable consumer would expect that a product marketed for one's health would contain dangerous PFAS, which are indisputably linked to harmful health effects in humans. Accordingly, Plaintiff and Class Members suffered economic injuries as a result of purchasing the Products.

## JURISDICTION AND VENUE

19. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because there are more than 100 class members and the aggregate amount in controversy exceeds $5,000,000, exclusive of interest, fees, and costs, and at least one Class member is a citizen of a state different from Defendant.

20. This Court has personal jurisdiction over Defendant because Defendant conducts substantial business within New York such that Defendant has significant, continuous, and pervasive contacts with this state.

21. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendant does substantial business in this District, a substantial part of the events giving rise to Plaintiff' claims took place within this District because Plaintiff purchased the Products in this District and was therefore injured in this District.

## PARTIES

22. Plaintiff Kevin Julian is, and at all times relevant to this action has been, a resident of Hawthorne, New York. From approximately January 2023 to July 2023, Plaintiff purchased Defendant's Chocolate Elite Protein Shakes from a Whole Foods store located in Chappaqua, New York. Plaintiff, when he made his purchase, saw and believed that the

Products were healthy, based on the fact that the Products were labeled as containing "only what you need" and marketed as a health-conscious choice, and he relied on these representations in making his purchase. Had Defendant disclosed on the label that the Products contained PFAS chemicals, and the harms that can result from ingesting PFAS chemicals, he would not have purchased the Products, or at the very least, would have only been willing to pay significantly less for them. As a direct result of Defendant's material misrepresentations and omissions, Plaintiff suffered, and continues to suffer, economic injuries. Plaintiff would consider purchasing Defendant's Products in the future if Defendant removed the PFAS chemicals from them.

23. Defendant Only What You Need, Inc. is a Delaware corporation with its principal place of business located in Fairfield, New Jersey. Defendant manufactures, markets, and distributes the Products throughout the United States.

## CLASS ACTION ALLEGATIONS

24. Plaintiff brings this action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of himself and all others similarly situated individuals nationwide (the "Class"), defined as follows:

> All consumers who purchased the Products within the United States during the statute of limitations period (the "Class Period") and until the date of class certification.

25. Included in the Class, to the extent necessary, is a subclass of all persons who purchased OWYN Products (as defined herein) in New York during the Class Period (the "New York Subclass").

26. Excluded from the Class are (1) Defendant, any entity or division in which Defendant has a controlling interest, and Defendant's legal representatives, officers, directors,

assigns, and successors; and (2) the judge to whom this case is assigned and the judge's staff.

27. Common questions of law and fact exist as to all Class members and predominate over questions affecting only individual Class members. These common questions of law and fact include, without limitation:

    a. Whether Defendant is responsible for the advertising at issue;

    b. Whether the advertising of the Products was unfair, false, deceptive, fraudulent and/or unlawful;

    c. Whether Defendant breached a warranty created through the marketing of its Products; and

    d. Whether Defendant's conduct as set forth above injured Plaintiff and Class members.

28. Plaintiff's claims are typical of the claims of the Class in that he was exposed to Defendant's false and misleading marketing and promotional materials and representations, purchased the Products, and suffered a loss as a result of those purchases.

29. The precise number of the Class members and their identities are unknown to Plaintiff at this time but may be determined through discovery.

30. Plaintiff is an adequate representative of the Class because his interests do not conflict with the interests of the Class members he seeks to represent, he has retained competent counsel experienced in prosecuting class actions involving false advertising, and he intends to prosecute this action vigorously.

31. The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of Class members. Each individual Class member may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendant's liability. A class action provides a fair and efficient method, if not the only method, for adjudicating this controversy and avoids the

potential for inconsistent or contradictory judgments.  The substantive claims of Plaintiff and the Class are nearly identical and will require evidentiary proof of the same kind and application of the same laws.  There is no plain, speedy, or adequate remedy other than by maintenance of this class action.

32. A class action is superior to other available methods for the fair and efficient adjudication of this controversy because Class members number in the thousands and individual joinder is impracticable. The expense and burden of individual litigation would make it impracticable or impossible for proposed Class members to prosecute their claims individually, and the disposition of this case as part of a single class action lawsuit will benefit the parties and greatly reduce the aggregate judicial resources that would be spent if this matter were handled as hundreds or thousands of separate lawsuits.  Trial of Plaintiff's and the Class members' claims together is manageable.  Unless the Class is certified, Defendant will remain free to continue to engage in the wrongful conduct alleged herein without consequence.

33. No member of the Class has a substantial interest in individually controlling the prosecution of a separate action.

34. The prerequisites to maintaining a class action for equitable relief are met: By representing that the Products sold by Defendant would be "clean" and by omitting the likelihood of PFAS exposure, Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final equitable and monetary relief with respect to the Class as a whole.

35. The prosecution of separate actions by members of the Class would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendant. Additionally, individual actions could be dispositive of the interests of the Class even where

certain Class members are not parties to such actions.

36. Defendant's conduct is generally applicable to the Class as a whole, and Plaintiff seeks, inter alia, equitable remedies with respect to the Class as a whole.

37. Plaintiff knows of no difficulty that will be encountered in the management of this litigation that would preclude its maintenance of a class action.

## CAUSES OF ACTION

### COUNT I
### Violations of the New York General Business Law § 349
### (On Behalf of Plaintiff and the New York Subclass)

38. Plaintiff realleges and incorporates herein by reference all preceding paragraphs of this Complaint as though set forth and at length herein.

39. The acts of Defendant, as described above, and each of them, constitute unlawful, deceptive, and fraudulent business acts and practices.

40. Defendant markets the Products as containing health benefits, when testing has shown the likely presence of PFAS, which have a negative impact on human health.

41. Defendant has violated, and continues to violate, § 349 of the New York General Business Law ("NYGBL"), which makes deceptive acts and practices unlawful. As a direct and proximate result of Defendant's violation of § 349, Plaintiff and other members of the New York Subclass have suffered damages in an amount to be determined at trial.

42. Defendant's improper consumer-oriented conduct is misleading in a material way in that it, inter alia, induced Plaintiff and the New York Subclass members to purchase and to pay the requested price for the Products when they otherwise would not have, or would not have been willing to pay as much.

43. Defendant made the untrue and/or misleading representations and omimssions

willfully, wantonly, and with reckless disregard for the truth.

44. Plaintiff and the New York Subclass members have been injured by their purchase of the Products, which were worth less than what they bargained and/or paid for, and which they selected over other products that may have been truthfully marketed.

45. Defendant's labelling induced Plaintiff and the New York Subclass members to buy the Products, to buy more of them, and/or to pay the price requested.

46. As a direct and proximate result of Defendant's violation of § 349, Plaintiff and other members of the New York Subclass paid for falsely advertised Products and, as such, have suffered damages in an amount to be determined at trial.

47. By reason of the foregoing, Plaintiff and the New York Subclass members are entitled to (1) actual damages and/or statutory damages; (2) punitive damages; and (3) reasonable attorneys' fees, pursuant to NYGBL § 349(h).

## COUNT II
### Violations of the New York General Business Law § 350
### (On Behalf of Plaintiff and the New York Subclass)

48. Plaintiff realleges and incorporates herein by reference all preceding paragraphs of this Complaint as though set forth and at length herein.

49. The acts of Defendant, as described above, and each of them, constitute unlawful, deceptive, and fraudulent business acts and practices.

50. New York General Business Law § 350 provides: "False advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state is hereby declared unlawful."

51. NYGBL § 350-a defines "false advertising," in relevant part, as "advertising, including labeling, of a commodity . . . if such advertising is misleading in a material respect."

52. Plaintiff and the members of the New York Subclass are consumers who purchased Defendant's Products in New York.

53. As a seller of goods to the consuming public, Defendant is engaged in the conduct of business, trade, or commerce within the intended ambit of § 350.

54. Defendant's representations (made by statement, word, design, device, sound, or any combination thereof), and also the extent to which Defendant's advertising has failed to reveal material facts with respect to its Products, as described above, have constituted false advertising in violation of § 350.

55. Defendant's actions led to direct, foreseeable, and proximate injury to Plaintiff and the members of the New York Subclass.

56. As a consequence of Defendant's deceptive marketing scheme, Plaintiff and the other members of the New York Subclass suffered an ascertainable loss, insofar as they would not have purchased the Products had the truth been known, would not have paid the requested price for the Products and/or would have purchased less of the Products; moreover, as a result of Defendant's conduct, Plaintiff and the other members of the New York Subclass received Products of less value than what they paid for.

57. By reason of the foregoing, Plaintiff and the New York Subclass members are entitled to (1) actual damages and/or statutory damages; (2) punitive damages; and (3) reasonable attorneys' fees, pursuant to NYGBL § 350-e(3).

## COUNT III
### Breach of Express Warranty
### (on Behalf of Plaintiff and All Class Members)

58. Plaintiff realleges and reincorporates by reference all paragraphs alleged above.

59. Plaintiff brings this claim individually and on behalf of members of the Class and

New York Subclass against Defendant.

60. In connection with the sale of the Products, Defendant, as the designer, manufacturer, marketer, distributor, and/or seller issued written warranties by representing that the Products contained "Only What You Need" and "Nothing You Don't."

61. In fact, the Products do not conform to the above-referenced representations because the Products contain dangerously high levels of PFAS chemicals.

62. Plaintiff and the members of the proposed Class and the New York Subclass were injured as a direct and proximate result of Defendant's breach because (a) they would not have purchased the Products if they had known that the they contains dangerously high levels of PFAS chemicals, and (b) they overpaid for the Products on account of the misrepresentations the Products contained "Only What You Need" and "Nothing You Don't."

63. Plaintiff's counsel notified Defendant of his claims in a letter, sent via FedEx, on July 18, 2023.

## COUNT IV
### Breach of Implied Warranty of Merchantability
### (on Behalf of Plaintiff and All Class Members)

64. Plaintiff realleges and reincorporates by reference all paragraphs alleged above.

65. Plaintiff brings this claim individually and on behalf of the members of the proposed Class and Subclass.

66. Defendant, as the designer, manufacturer, distributor and seller, impliedly warranted that the Products were fit for their intended purpose in that the products were safe in ingest.  Defendant did so with the intent to induce Plaintiff and proposed Class and Subclass members to purchase the Products.

67. Defendant breached it implied warranty because the Products each contain

dangerously high levels of PFAS chemicals.

68. Plaintiff and proposed Class and Subclass members were injured as a direct and proximate result of Defendant's breach because (a) they would not have purchased the Products had known that they each contain dangerously high levels of PFAS chemicals, (b) they overpaid for the Products because they are sold at a price premium when compared to similar products that do not contain dangerously high levels of PFAS chemicals, and (c) the Products did not have the characteristics, uses, or benefits as promised, namely that they contain "Only What You Need" and "Nothing You Don't."

## COUNT V
### Unjust Enrichment
### (on Behalf of Plaintiff and All Class Members)

69. Plaintiff realleges and reincorporates by reference all paragraphs alleged above.

70. Plaintiff brings this claim individually and on behalf of the members of the proposed Class and Subclass.

71. Plaintiff and the proposed Class and Subclass members conferred benefits on Defendant by purchasing the Products.

72. Defendant had knowledge of such benefits.

73. Defendant has been unjustly enriched in retaining the revenues derived from Plaintiff's and the proposed Class and Subclass members' purchases of the Products. Retention of those moneys under these circumstances is unjust and inequitable because Defendant misrepresented that they contain "Only What You Need" and "Nothing You Don't," when, in fact, they contain dangerously high levels of PFAS chemicals, and made omissions about those chemicals.

74. Because Defendant's retention of the non-gratuitous benefits conferred on it by

Plaintiff and proposed Class and Subclass members is unjust and inequitable, Defendant must pay restitution to Plaintiff and the proposed Class and Subclass members for its unjust enrichment, as ordered by the Court.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff and the other Class members respectfully request that the Court:

a. For an order certifying the nationwide Class and the New York Subclass under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff as representatives of the Class and New York Subclass and Plaintiff's attorneys as Class Counsel to represent the Class and New York Subclass members;

b. For an order declaring that Defendant's conduct violates the statutes referenced herein;

c. For an order finding in favor of Plaintiff, the nationwide Class, and the New York Subclass on all causes of action asserted herein;

d. For compensatory, statutory, and punitive damages in amounts to be determined by the Court and/or jury;

e. For prejudgment interest on all amounts awarded;

f. For an order of restitution and all other forms of equitable monetary relief;

g. For an order enjoining Defendant from continuing the illegal practices detailed herein and compelling Defendant to undertake a corrective advertising campaign; and

h. For an order awarding Plaintiff and the Class and New York Subclass their reasonable attorneys' fees and expenses and costs of suit.

## **JURY DEMAND**

Plaintiff demands a trial by jury on all causes of action and issues so triable.

Dated:  October 30, 2023                             Respectfully submitted,

                                                                         **BURSOR & FISHER, P.A.**

                                                                         By:    /s *Joshua D. Arisohn*
                                                                               Joshua D. Arisohn

Joshua D. Arisohn
Philip L. Fraietta
Alec M. Leslie
1330 Avenue of the Americas, 32nd Floor
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
Email:   jarisohn@bursor.com
              pfraietta@bursor.com
              aleslie@bursor.com

*Attorneys for Plaintiff*